(32 Misc. Rep. 304.)

### MORSE et al. v. WHEELER et al.

(Supreme Court, Equity Term, Erie County. July, 1900.)

PRIVATE CANAL—RIGHTS OF ABUTTING DOCK OWNERS—INJUNCTIONS.

    Where a canal is constructed as a private waterway, the abutting owners agreeing that there shall be a free and undisturbed right of way for every vessel entering it for transaction of business with any of them, a dock owner will not be enjoined from placing a vessel at his dock, where it is discharging grain at his elevator, so as to overlap an adjoining dock, it being longer than his frontage, and its presence not interfering with any business at the adjoining dock.

Action by David R. Morse and another, guardians ad litem for Joanna Cutter Cheesman and another, against Albert J. Wheeler and others for injunction. Judgment for defendants.

Adelbert Moot, for plaintiffs.

Spencer Clinton, for defendants.

KENEFICK, J. The plaintiffs and the defendants own adjoining premises on the Evans ship canal, in the city of Buffalo, which canal was constructed and is maintained as a private waterway for the use of the owners of the lands abutting thereon, and persons doing business with such owners, which said canal connects with the Buf-

falo river near where the latter empties into Lake Erie. The plaintiffs own and occupy a frontage of 160 feet on the east side of the canal, upon which there was constructed, upwards of 20 years ago, docks and a grain elevator, which elevator, however, and the docks and premises in connection therewith, have not been used for any purpose for 11 or 12 years. The defendants own and occupy a frontage of about 196 feet on the east bank of the canal, next north of plaintiffs' premises, and extending to the present northerly terminus of said canal, at Erie street. Upon these premises the defendants built, about 11 years ago, docks and a grain elevator, which has since been, and is now, being used for elevating grain from vessels, storing the same, and transhipping it by rail and canal to divers other points. The vessels discharging their cargoes at the defendants' elevator average 250 to 300 feet in length, and many of them are 400 feet long. As these vessels, while discharging their cargoes, are required to be moored fast to the dock in front of the defendants' elevator, it will be seen that they overlap, according to their length, the whole or a large portion of the plaintiffs' dock. That this overlapping exists, and has existed ever since the operation of the defendants' elevator, is beyond dispute. Prior to the season of navigation of 1898, plaintiffs did not object to this practice, which may have been due, in part, at least, to the fact that up to that time their elevator and the defendants' elevator belonged to an elevator pool, which entitled the plaintiffs to draw a certain percentage of the net profits or income of all the working elevators in the port of Buffalo, even though the plaintiffs' elevator was not in operation. After the dissolution of this pool, in 1898, the plaintiffs strenuously protested against the mooring of vessels alongside their dock while unloading at the defendants' elevator, but notwithstanding such protest the defendants have persisted in so doing. The plaintiffs ask, in this action, that the defendants be enjoined and restrained from using the plaintiffs' docks in any manner, and from placing or mooring, or permitting others to place or moor, vessels alongside of such docks, or any part thereof. The granting of such relief would practically prohibit the defendants from using their elevator; for it could not accommodate, with its own dockage, the craft now engaged in the grain traffic. The only alternative in such case would be the option of the plaintiffs herein as to whether they would sell or lease their premises to the defendants upon such terms as the former might see fit to impose. A court of equity will not render a judgment which will so operate, unless the plaintiffs' right thereto is reasonably clear.

When this canal was constructed, the then abutting owners thereon entered into a mutual contract for themselves, their heirs and assigns, for the management and direction thereof, which provided, among other things:

"That a free and an undisturbed right of way, ingress and egress, through, in, and from any and every part of said canal, shall be kept open, be maintained, and remain so forever to and for any and every vessel, boat, or craft, rafts of wood or timber entering or about to enter said canal, for the transaction of any business or commerce at or within said canal with any of the said parties, their or each of their heirs, assigns, owners, and occupants."

With respect to the abutting owners and the craft engaged in trade with them, this canal became under this agreement a common highway, navigable by them in a reasonable manner and for reasonable purposes. Of course, the right of way in, through, and from any and every part of the canal, thus guarantied to the abutting owners, and to all craft transacting business with them, carried with it the reasonable right to have such craft stop at the dock of the abutting owners, with whom they were then engaged in commerce. Is this right to be denied because, in lying up at that dock, the craft may overlap in whole or in part the dock of the adjoining owner? Is the right to stop and have their cargoes discharged at the defendants' elevator to be denied to all vessels whose length exceeds the dock frontage of the elevator? Because of such overlapping, is there an abuse of the reasonable right to stop and transact business? It would seem not. The testimony indicates that vessels come to the Ontario elevator during the season of navigation, at irregular intervals; that for days no vessel is there; that the process of elevating a cargo occupies but a few hours, and there is no contention of any unreasonable delay in elevating cargoes. There is no claim that the vessels stopping at defendants' dock to be unloaded in any wise interfered with, impeded, or prevented the plaintiffs' use of their dock, as the evidence is undisputed that the plaintiffs have transacted no business at their dock since the defendants' elevator has been erected. Indeed, it would be impossible for the plaintiffs' elevator to engage in the business of elevating grain at all if the principle they contend for in this case is to be applied, because the plaintiffs' dock frontage is inadequate to accommodate the smallest vessels now engaged in the grain trade. If both elevators were actively engaged in elevating grain, it is not unreasonable to assume, from the methods of conducting the grain business at this port as disclosed by the evidence in this case, that only upon rare occasions would these elevators be engaged in elevating cargoes at the same time, and, with a reasonable spirit of accommodation towards each other, the loss and inconvenience to either upon such occasions would be largely minimized.

I cannot find that the precise question in this case has ever been passed on by the courts of this state. It is a question, however, of prime importance in the harbor of Buffalo, where many situations exist similar to that disclosed in this case. In the case of Ranstead v. The Wm. H. Brinsfield, 39 Fed. 215, which was decided in the United States district court for the district of Maryland, it was held that the owner of a wharf overlapped by a vessel stopping at an adjoining wharf was entitled to compensation for such use. See, also, Ranstead v. Fahey (D. C.) 44 Fed. 805. In the case of The Hercules, 28 Fed. 475, decided in the United States district court for the Eastern district of Michigan, it was held that, under the statutes of that state, the owner of a wharf overlapped in this manner had a claim for wharfage against the vessel so overlapping, although it was stated in the opinion that, under the general maritime law and irrespective of the statute, no such claim existed. However, it has been held in the chancery division of the high court of

justice of England, in the case of Original Hartlepool Collieries Co. v. Gibb, reported in L. R. 5 Ch. Div. 713, that such overlapping gives no right of compensation to the owner of the wharf overlapped, unless the overlapping interfered with reasonable access to his property, in which event he might recover damages as for a nuisance. It is unnecessary to decide, however, in this action, whether the plaintiffs can claim compensation for such overlapping of their dock. It may be that the plaintiffs would be entitled to a reasonable wharfage for such beneficial use of their dock, but that question can be determined in an action at law to recover such compensation.

I am quite clear that this action to enjoin the defendants from placing or mooring vessels, discharging cargoes at their elevator, so that any part of such vessels shall be alongside of or overlap the plaintiffs' dock, should not be maintained. No reported case has been called to my attention granting injunctive relief of such a character under circumstances similar to those existing in this case. On the contrary, in the Original Hartlepool Collieries Case, supra, such injunctive relief was expressly denied to the defendant upon the counterclaim interposed by him asking such relief. The complaint is dismissed, with costs.

Complaint dismissed, with costs.